[Civ. No. 3465. First Appellate District, Division Two.—October 26, 1920.]

JOSEPH J. HINCKLEY et al., as Administrator, etc., Respondents, v. THE COUNTY OF SAN DIEGO, Appellant.

[1] TAXATION—INTANGIBLE PERSONAL PROPERTY—SITUS.—As a general rule, intangible personal property, for the purposes of taxation, has its *situs* at the domicile of the owner.

[2] ID.—"BUSINESS SITUS"—PERMANENCY OF LOCATION.—An exception to such general rule prevails where intangible personal property has a "business *situs*" in a state other than that of the owner's domicile; but an indispensable condition of such a *situs* is the necessity of something like a general, or more or less continuous, course of business or series of transactions within the state where the property is physically located, as distinguished from mere sporadic and isolated transactions.

[3] ID.—PHYSICAL LOCATION AND CONTROL OF PROPERTY OUTSIDE STATE—JURISDICTION FOR TAX PURPOSES.—Where at the time of the death of the owner, a resident of this state, certain promissory notes are physically situated in another state, and they are reduced to possession and are under the control of executors in the latter state, and the persons legally entitled to such notes are nonresidents of this state, the latter has no jurisdiction over them for the purposes of taxation.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. S. Utley, District Attorney, and Albert J. Lee, Assistant District Attorney, for Appellant.

Haines & Haines and Fred O'Farrell for Respondents.

LANGDON, P. J.—This is an appeal by the defendant, county of San Diego, from a judgment against it decreeing that plaintiffs recover from the county $2,608.70, there-

1. *Situs* of personal property for purposes of taxation, notes, 56 Am. Dec. 522; 62 Am. St. Rep. 448; of decedent, notes, 1 Ann. Cas. 438; 20 Ann. Cas. 729.

tofore paid under protest by plaintiffs as state and county taxes assessed and levied against the estate of Thomas S. Parker, deceased, for the fiscal year 1918–19.

As stated by appellant, the sole question is whether, for taxation purposes, intangible personal property has its *situs* at the domicile of the decedent, who at the time of his death was a resident of the state of California, or at the place where the evidences of indebtedness are physically situated and have been reduced to possession and are under the control of executors in a foreign jurisdiction.

Briefly, the facts are these: Thomas S. Parker, of whose estate plaintiffs are administrator and administratrix, respectively, died at Rochester, Minnesota, on July 11, 1917, and was at that time a resident of the county of San Diego, state of California. He left a will by which he appointed the American Trust and Savings Bank of El Paso, Texas, and James G. McNary, of the same place, executors and also trustees. Said will was admitted to probate in the county of El Paso, state of Texas, on September 4, 1917. On September 27, 1917, said will was admitted to probate in the county of San Diego, state of California, an exemplified copy thereof, and of the probate thereof in the state of Texas, having theretofore been filed in the superior court of said county of San Diego, and the plaintiffs were appointed administrator and administratrix, respectively, with the will annexed.

On the first Monday in March, 1918, the plaintiffs had in their possession in the county of San Diego, belonging to said estate, certain real estate and personal property, which was valued by the assessor for taxation purposes at $1,850. As an addition to the tax return made by the plaintiffs, the assessor inserted an item of "money and solvent credits," and valued them in the arbitrary sum of $100,000, and said item was placed upon the assessment-roll and a tax thereupon levied in the sum of $2,608.70, which was paid by the plaintiffs under protest. Thereafter, and in due course and according to law, plaintiffs filed a claim with the board of supervisors against the county of San Diego for the repayment of said tax so paid, which claim was rejected by the board of supervisors. Thereafter, this action was commenced, at a time when the estate of

said Parker was still in process of distribution in both jurisdictions.

In addition to the property physically situated in the county of San Diego, at the time of Parker's death, he was the owner of ten promissory notes of the J. H. Nations Meat and Supply Company, of El Paso, Texas, in the aggregate principal sum of $50,000, said notes being secured by a lien on real estate situated in said city and state. These notes were in the hands of a bank at El Paso for collection. Said Parker, at the time of his death, was also the owner of money on deposit in the First National Bank at El Paso, amounting to $684.35; money on deposit in the American Trust and Security Bank, Washington, D. C., amounting to $208.37; liberty bonds purchased and paid for by decedent in his lifetime, amounting to $20,000, and on deposit with the bank in El Paso; and in addition thereto, certain jewelry of the value of $110 which was on his person at the time of his death.

On the first Monday in March, 1918, the money, jewelry, and evidences of indebtedness referred to in the preceding paragraph, and in addition thereto $1,750 collected as interest, were in the hands of the executors of the last will and testament of decedent at El Paso, and said money, jewelry, and evidence of indebtedness were physically situated at El Paso, and had not been physically in the state of California at any time subsequent to the death of Parker, and had never been in the possession or the control of plaintiffs or either of them.

[1] It is needless to discuss at length the general principles involved in appellant's contention. The rules governing the *situs* of personal property for the purposes of taxation have been clearly defined in this state and in other jurisdictions. (See note to *Liverpool & London & Globe Ins. Co.* v. *Board of Assessors,* L. R. A. 1915C, p. 903; also note to *Boyd* v. *Selma,* 16 L. R. A. 729; *Estate of Fair,* 128 Cal. 607, [61 Pac. 184]; *Mackay* v. *San Francisco,* 128 Cal. 678, [61 Pac. 382]; *Mackay* v. *San Francisco,* 113 Cal. 392, [45 Pac. 696]; *San Francisco* v. *Lux,* 64 Cal. 481, [2 Pac. 254].)

From these cases it is clear, as stated by appellant, that the general rule is that if one is domiciled in the state, his personal property, in contemplation of law, has its *situs*

there and is taxable there.  In *Worthington* v. *Sebastian,* 25 Ohio St. 1, which has been quoted in many subsequent cases, it is said: "Intangible property has no actual *situs*.  If, for purposes of taxation, we assign it a legal *situs,* surely that *situs* should be the place where it is owned and not the place where it is owed.  It is incapable of a separate *situs* and must follow the *situs* of the creditor or the debtor.  To make it follow the residence of the latter is to tax the debtor and not the creditor."  (See, also, *Estate of Fair, supra; Mackay* v. *San Francisco,* 128 Cal. 678, [61 Pac. 382]; *Goldgart* v. *People,* 106 Ill. 25; *Scripps* v. *Fulton County,* 183 Ill. 278, [55 N. E. 700]; *Hayward* v. *Christian County,* 189 Ill. 234, [59 N. E. 601]; *Matzenbaugh* v. *People,* 194 Ill. 108, [88 Am. St. Rep. 134, 62 N. E. 546].)

[2]  There is a well-recognized exception to this general rule, which occurs when there exist certain combinations of circumstances upon which a *situs,* commonly called a "business *situs*" may be predicated.  We refer to this exception in passing for the reason that the respondents attempt in their brief to bring the facts of the present case within this exception.  In reply to this contention, it is to be observed that the findings in the present case show that the notes of J. H. Nations Meat and Supply Company, aggregating $50,000 were in the hands of the bank at El Paso at the time of the death of Parker merely for the purpose of collection.  It has been held that notes left in a state other than the domicile of the owner for safekeeping or for collection do not acquire a "business *situs*" so as to subject them to taxation in the place of their physical location. (*Johnson County* v. *Hewitt,* 76 Kan. 816, [14 L. R. A. (N. S.) 493, 93 Pac. 181]; *Gibbins* v. *Adamson,* 5 Kan. App. 90, [48 Pac. 871]; affirmed in 58 Kan. 818, [51 Pac. 1101]; *Hunter* v. *Board of Supervisors,* 33 Iowa, 376, [11 Am. Rep. 132]; *Bullock* v. *Guilford,* 59 Vt. 516, [9 Atl. 360].)

Upon this subject it is sufficient to say that the cases announcing the rules with reference to a "business *situs*" of personal property, all suggest as an indispensable condition of such a *situs,* the necessity of something like a general, or more or less continuous, course of business or series of transactions within the state where the property is

physically located, as distinguished from mere sporadic and isolated transactions. In the case of Vicksburg v. Armour Packing Co. (Miss.), 24 South. 224, the court observed that the question of what constituted a business situs was a difficult one, but from the reports on the subject it would seem that a business situs is connected with the idea of more or less permanency of location of the credits, or with a purpose to incorporate them when collected into the mass of property of the state. (See, also, Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, [51 L. Ed. 853, 27 Sup. Ct. Rep. 499]; State Assessors v. Comptoir National d'Escompte,. 191 U. S. 388, [48 L. Ed. 232, 24 Sup. Ct. Rep. 109, see, also, Rose's U. S. Notes].)

It is to be remembered that the only item of importance involved is the notes of Nations Meat and Supply Company, aggregating $50,000; it being conceded that the tax was improper upon the liberty bonds, and that the plaintiffs were entitled to a recovery for the amount of the tax paid thereon.

Having determined that the facts in the present case do not bring it within the exception to the general rule, which is founded upon the idea of the property having acquired a "business situs" elsewhere than the domicile of the owner, let us revert again to the general rule hereinbefore recognized, that intangible personal property, for the purposes of taxation, has its situs at the domicile of the owner. [3] The application of this general rule in the present case, however, does not sustain the contentions of the appellant, for the reason that we are unable to agree with the appellant that the owner of the property, at the time .of the levy of the tax, was domiciled within the state of California. It affirmatively appears in the present case that the court at El Paso has taken the property in question into its custody and is administering upon it—indeed, has partially distributed it. The courts of California have no jurisdiction of the El Paso executors who have been given a qualified interest in this property during the period of administration for the purposes of such administration. In so far as the title to this property is concerned, it appears from the record that one-half of the property went to the wife of the decedent as her share of the community property. She is, and at all times mentioned in the record has

been, a resident of the state of Washington, and as to her
share of the property, assuredly, the owner thereof is not
resident of this state. As to the remainder of the property:
by the terms of the will, after administration, it was to
be held by the persons appointed as executors by the El
Paso court, as trustees for certain definite purposes. These
trustees were not residents of California. It is, of course,
true that at the time of the levy of the tax the property
was not being held by the trustees in that capacity, as it
had not yet been distributed to them as such. It was being
held by them in their capacity as executors. As such they
had a limited property in the notes. (*Ham* v. *Henderson,*
50 Cal. 367; *Page* v. *Tucker,* 54 Cal. 121; *Jahns* v. *Nolting,*
29 Cal. 507, 510, 511; *Freese* v. *Hibernia Savings etc. Co.,*
139 Cal., at p. 397, [73 Pac. 172].) As to the vested legal
title, subject to this qualified right in the executors, it,
assuredly, was in the trustees, the persons to whom the
property had been bequeathed. Therefore, it appears that
the ownership, title, and right to the present and future
possession of the property, and, indeed, each and every
right, title, and interest, legal and equitable, in the same,
was vested in nonresidents of this state at the time of the
levy of the tax in question.

It is, of course, axiomatic that the taxing power of the
state does not extend to property which is neither actually
nor constructively within the state. (*Maxwell* v. *People,*
189 Ill. 546, [59 N. E. 1101].) Under the fiction or maxim
that the *situs* of personal property follows the domicile of
the owner, property is said to be constructively within the
state of the owner's domicile to give jurisdiction for taxa-
tion. In cases where the owner is in the state, or his execu-
tor or trustees are within the state, holding the property,
the state has some way to acquire jurisdiction of the prop-
erty, constructively, at least, by acquiring jurisdiction of
the owner or holder thereof. But in the present case there
was no one in California who had either the title, the pos-
session, or the right to the possession of these credits at the
time of the levy of the tax. There was no one in the state
who had either an absolute or a qualified right to the credits
or to the evidences thereof. The courts of California have
no jurisdiction of the El Paso executors who have the right
to the possession of this property during the period of

administration, nor of the trustees who have the vested legal title, subject to the right of the executors.

In the case of *Mackay* v. *San Francisco*, 128 Cal. 678, [61 Pac. 382], a quotation is made from Judge Cooley's work on Taxation (page 376), in which it is said: "If a fund is in charge of a court it is taxable in the jurisdiction having control of it."

In the present case the courts of California have no jurisdiction over the *res* by reason of its actual *situs* here, and they cannot give the credits a constructive *situs* in this state because they cannot acquire jurisdiction over the owner or holder thereof.

The Political Code, section 3629 thereof, requires the assessor to exact from each person a statement ·in writing showing all property "owned by such person, or in his possession or under his control." The notes in question were not owned by plaintiffs; they were not claimed by, nor in the possession of, nor under the control of plaintiffs. Furthermore, possession of the same could not legally be secured by the plaintiffs. They could not, as a matter of right, demand that the El Paso court order the credits transmitted to them in California.

In the case of *Mackay* v. *San Francisco*, 128 Cal. 678, [61 Pac. 382], the bonds sought to be taxed were held· by trustees, one of whom lived in San Francisco and the other in Nevada; the court said in that case: "The property under this rule could not be assessed to the plaintiffs in San Francisco, because that is the place of domicile of only one of them. It could not be assessed to them in Nevada, because that is the place of domicile of only one of them. The property is not in California nor in Nevada, but, being intangible personal property, is said by defendants to follow the person of the owner. If it follows the person of the owner, it could not, as matter of law, be said to follow the person of the plaintiff who resides in California and to forsake and refuse to follow the person of the plaintiff who resides in Nevada. It follows one as much as the other, and its *situs* is that of the place of domicile of its owners. Therefore, on the first Monday of March, 1895, the plaintiff Mackay was a resident of Nevada and was the owner of an undivided one-half of the bonds, *and neither the property nor the owner being within the jurisdiction of the state, the assessment, as to*

*Mackay's interest, was void.* The language of the constitution is: 'All property in the state . . . shall be taxed in proportion to its value.' The interest of Mackay in this property was not 'property in the state' within the meaning of the constitution.''

It is true that in the last cited case, the property was held by trustees after distribution, and in the present case the American Trust and Savings Bank of El Paso and James G. McNary of the same place are holding the notes as executors and not as trustees, because the property has not yet been distributed to them as trustees under the will. However, the fundamental question presented is the same in both cases. The answer to the contention of the appellant in the present case is, in the language of the Mackay case, that ''neither the property nor the owner being within the jurisdiction of the state the assessment . . . was void.'' The probate court of El Paso, Texas, had the right to take this property into its custody. It had the right to distribute the same without reference to administration pending in other states.

Again, in the language of the Mackay case, how can it be said that the notes shall follow the person of the administrator who has never taken possession of them, and cannot secure possession of them because they are outside of the jurisdiction of the court through which he derives his authority, and forsake and refuse to follow the persons of the executors who have taken possession of them and are exercising control over them, as an arm of the court having jurisdiction over the credits by reason of their actual *situs?* With reference to the title to these notes, there is privity between Parker, the decedent, and his El Paso executors, but the administrators in California are unconnected with these assets in any way.

In *Goldgart* v. *People,* 106 Ill. 25, it is said, quoting from Burroughs on Taxation: ''If the owner be resident in the state, there is jurisdiction over his person and over his credits also, which, in legal contemplation, in the absence of anything showing they have a *situs* elsewhere, accompany him. If the owner is absent, but the credits are in fact here, in the hands of an agent for renewal or collection, with the view of reloaning the money by the agent as a

permanent business, they have a *situs* here for the purpose of taxation, and there is jurisdiction over the thing."

In the present case, the state of California has neither jurisdiction over the credits nor over the person owning them nor in the possession and control of them. It is not, as contended by appellants, merely a case of the construction of the statutes of this state. The question involved goes to the jurisdiction, to the power of the state to tax at all. "While the mode, form, and extent of taxation are, speaking generally, limited, only by the wisdom of the legislature, that power is limited by principle inhering in the very nature of constitutional government, namely, that the taxation imposed must have relation to a subject within the jurisdiction of the taxing government." (*Louisville etc. Co.* v. *Kentucky,* 188 U. S. 385, [47 L. Ed. 513, 23 Sup. Ct. Rep. 463, see, also, Rose's U. S. Notes].)

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.